UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETTY BECKLES,

                          Plaintiff,

      -against-

THE CITY OF NEW YORK, P.O. Jean Verdesoto, P.O. Julio Gonzalez, P.O. Rafael Sanchez, P.O. Seo Seungwoo, Frank Amill, P.O. Jessica Caballos, P.O. Thomas Fabrizi, and P.O. Nicole Febus,

                          Defendants.

08 Civ. 03687 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

       Plaintiff Betty Beckles ("Beckles") brings this action pursuant to 42 U.S.C. § 1983, alleging violations of her rights under the Federal and New York State Constitutions, as well as alleging various state law torts. In July 2007, Beckles had an altercation with her grandson, Lionel Moye ("Moye"), at her apartment in Manhattan. When officers arrived, they arrested both Moye and Beckles. During the arrest Beckles sustained injuries to her shoulder. Beckles now sues New York City (the "City") and several police officers alleging, *inter alia*, false arrest and use of excessive force in effecting an arrest. Defendants have moved for summary judgment. For the reasons that follow, defendants' motion is GRANTED in its entirety.

## I.  FACTUAL SETTING

At 6:30 p.m. on July 3, 2007, Beckles, then fifty-eight years old, was home in her apartment on 115th Street and 5th Avenue in Manhattan, preparing for dinner and chopping onions with a steak knife.  (Beckles Dep. at 3, 196-197; Beckles 50-H Hr'g at 15, 30; Frank Decl. Ex. K.)  Around that time, Beckles' grandson Lionel Moye ("Moye"), and his friend Jonathan Roman ("Roman"), arrived to collect $200 each Beckles had promised them for moving some furniture around her apartment in preparation for a paint job.  (Beckles Dep. at 187-188, 191; Pl.s' 56.1 Counterstatement ¶ 1.)  Beckles, however, gave Moye and Roman only $100 each because they had not moved the furniture back after the painting.  (Beckles Dep. at 192, 201.)  Beckles and Moye began arguing; Moye cursed at Beckles and demanded the additional $100, and Beckles directed Moye and Roman to the door.  (*Id*. at 203-204.)  When they would not leave, Beckles walked down a hall to her bedroom and called the police, telling them that her grandson would not leave her apartment.  (*Id*. at 210.)  She then walked back to the kitchen but Moye waylaid her in the hallway, grabbing her arm and daring her to slap him.  (Beckles 50-H Hr'g at 36-37.)  Beckles pushed Moye away and scratched him in the face.  (*Id*. at 39-40.)  Beckles was thus able to get around Moye and exit the hallway.  (*Id*. at 40.)  Once back in the kitchen, Beckles allegedly picked up the steak knife and "threatened to come at" Moye with it.  (Moye Dep. at 40-41.)  Roman then called the police, telling them that Beckles was armed with a knife.  (*Id*. at 42-43; Frank Decl. Ex. H.)[1]  Moye was able to disarm Beckles, but in the process Beckles again scratched Moye's face.  (Moye Dep. at

---

[1] Frank Decl. Ex. H is a "Sprint Report" from July 3, 2007, indicating that Beckles first called the police regarding "GRANDSON" at 6:32 p.m.; and that at 6:40 p.m. the police received another call regarding the same incident with the message that "GRANDMA ARMED W KNIFE AT LOC."

42-43, 48.)  The knife fell to the floor, where Roman picked it up and put it on the kitchen table.  (*Id*. at 48.)

About twenty minutes later several police officers arrived.  (Beckles Dep. at 219.)  Beckles explained that Moye would not leave her apartment and had prevented her from leaving.  (*Id*. at 224.)  Some officers took Moye and Roman outside the apartment where the two young men told their side of the story, explaining that Beckles had cursed at and threatened them, and pointing to the knife on the kitchen table through the open apartment door.  (Moye Dep. at 53, 55, 58.)  Moye was then handcuffed and taken to the police station; Roman was released.  (*Id*. at 55)  Correctional Health Services noted scratches on Moye's face and lesions on his right hand.  (Frank Decl. Ex. G at 1.)

Other officers reentered the apartment to speak with Beckles.  One officer informed Beckles that because the police did not know who was telling the truth, Beckles would have to come to the police station.  (Beckles Dep. at 230.)  At that point Beckles began arguing that she should not be taken to the station because she had called the police and because Moye had been in her house.  (Beckles 50-H Hr'g at 62.)  Beckles "call[ed] for assistance," at which point the police called for backup.  (*Id*. at 59, 63.)  Beckles admits to being "angry" and "agitated," and "talking loud" and "moving [her] hands," during this exchange.  (*Id*. at 62-63; Beckles Dep. at 233.)  One officer attempted to handcuff Beckles, but Beckles "wasn't gonna let him arrest [her]."  (Beckles 50-H Hr'g at 65.)  Though she was moving away from the officer, the officer was able to get the handcuffs on Beckles' left wrist.  (*Id*.)  At that point, Beckles "really started arguing, [because] I was really upset."  (*Id*. at 66.)  Her neighbors also "started hollering."  (*Id*.)  Though the officer tried several times to cuff Beckles' other wrist, Beckles "wouldn't let

3

him." (*Id*. at 67; Beckles Dep. at 234.) Beckles was "moving" and "fusing with [the arresting officer]" so that he could not secure the second cuff. (Beckles Dep. at 234.) The argument lasted "ten or twenty" minutes, at which point the officer was able to handcuff Beckles' wrists behind her back. (Beckles 50H-Hr'g at 66-67.) Apparently, Beckles' arm was in pain and she attempted to inform the officer that she would go with him willfully, but the officer took no heed. (Beckles 50-H Hr'g at 67.) Beckles also informed the officer that she had "a bad arm." (Beckles Dep. at 235-236.) Finally, Beckles apparently had some trouble getting in the police car due to her hands being cuffed and her bad knees. (Beckles 50-H Hr'g at 77.) Beckles complained that the cuffs were hurting her arms while driving to the police station, but the officers told her she would be uncuffed when they arrived. (*Id*. at 78-79.) The drive to the station took "about five or ten minutes," and once there Beckles was not uncuffed for another "about twenty minutes." (*Id*. at 79-80, 88.)

On April 17, 2008, Beckles commenced this action. (Defs.' 56.1 Statement ¶ 1.) Beckles' operative complaint, filed October 16, 2009, asserts claims under 42 U.S.C. § 1983 and the New York State Constitution, and for several state law torts. (*See* Fourth Amend. Compl. ¶¶ 31-69.) Beckles' Section 1983 claims sound in false arrest and in excessive force in violation of the Fourth and Eighth Amendments. It alleges that she was arrested without probable cause and through the use of excessive force; that defendants conspired to commit those violations; and that defendants' acts went beyond the scope of their jurisdiction. (*Id*. ¶¶ 32-34.)[2]

---

[2] Though the complaint lacks in specifics, Beckles does not appear to contest that her claims are for false arrest and excessive force. (*See* Pl.'s Opp'n at 4-5, 9.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper if the moving party shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact. *Celotex* 477 U.S. at 323-25.  As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (rejecting a construction of Rule 56(c) that would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory

statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256-57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial. *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (stating that "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [a Rule 56] affidavit") (internal quotation marks and citation omitted).

### B. The Officers Had Probable Cause to Arrest Beckles

"It is well settled that the existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under § 1983." *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 357, 364 (S.D.N.Y. 2010). "Probable cause exists when [one] ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008). A district court must analyze the "totality of the circumstances" then known to the arresting officers in deciding whether probable cause exists. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); *Howard v. City of New York*, No. 08 Civ. 6085, 2010 WL 1914747, at *1 (S.D.N.Y. May 5, 2010) ("In considering whether there is probable cause for an arrest, courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996))). Moreover, merely

because no criminal charge ensues does not undermine the existence of probable cause. *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002); *see also Rowe v. City of Rochester*, No. 00-CV-6333, 2002 WL 31974537, at *9 (W.D.N.Y. Dec. 23, 2002) ("[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination.").

Probable cause existed here. A "person of reasonable caution" who (1) observed scratches and lesions on Moye's face and hands, (2) heard Moye accuse Beckles of attacking him with a knife and scratching him, causing the injuries, and (3) saw the indentified knife, "would possess sufficient information to believe" that Beckles had, in fact, attacked or threatened Moye with a knife. *See Williams*, 535 F.3d at 79. Though when officers have reason to doubt a putative victim's veracity, that doubt might weigh against probable cause, *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001), Beckles fails to make a sufficient showing that her arresting officers had reason to doubt Moye's statements. Beckles points out that the incident occurred at her home, that Moye and Roman did not live there, that Moye and Roman are younger than she is, and that she told the officers she was just cooking dinner and did not threaten Moye. (Pl.'s Opp'n at 6-7.)[3] Beckles does not, however, provide any legal or logical support for why these facts cast doubt on *Moye*'s statements; and indeed, the law is otherwise. "[Beckles] argues that because the police failed to conduct inquiries and took [Moye's] word over [hers], probable cause to arrest [her] was lacking. However, once [Moye] complained to

---

[3] Beckles also suggests that the arresting officers were racially motivated to arrest black people as indicated by the facts that (1) they let Roman, a Hispanic, leave with being arrested, and (2) an unnamed officer—not an arresting officer—referred to Moye and Beckles as "these blacks" when Beckles arrived at the police station. (Beckles 50-H Hr'g at 86 (noting unidentified station officer's question: "[W]ho brought this woman in here, these blacks[?]").) Despite that neither letting Roman go nor the purported officer's purported hearsay statement necessarily indicates racist tendencies, the point fails in that neither fact undermines the officers' conclusion of probable cause taking into account the circumstances existing at the time they made the arrest.

7

the police about an assault, the officers had probable cause to arrest [Beckles], and were not required to investigate further." *Daniels v. City of New York*, No. 03 Civ. 0809, 2003 WL 22510379, at *4 (S.D.N.Y. Nov. 5, 2003) (Lynch, J.). Indeed, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997). Specifically, Beckles' "protestations of innocence" do not undermine probable cause when the putative victim, Moye's, "version of events [comports with] his visible injuries." *Daniels*, 2003 WL 22510379, at *4. Thus even taking Beckles' version of events as true, the undisputed facts establish that the police here had probable cause and Beckles cannot maintain her Section 1983 false arrest claim.

## C.  The Arresting Officers Did Not Use Excessive Force

The "use of excessive force in connection with arresting criminal suspects is prohibited by the Fourth Amendment." *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 379 (S.D.N.Y. 2010). To prevail on an excessive force claim, "plaintiff must show that the amount of force used by police was objectively unreasonable in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation." *Espada v. Schneider*, 522 F. Supp. 2d 544, 555 (S.D.N.Y. 2007) (internal quotation marks omitted); *see also Graham v. Conner*, 490 U.S. 389, 396-97 (1989)). The court should analyze all relevant facts, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir. 1998). "Officers' actions are not to be judged in hindsight, [however,] but from the perspective of a reasonable officer on the scene. *Espada*, 522 F.3d at 555. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment, and [] officers may need to use some degree of force in the course of an arrest." *Id*. (internal quotation marks omitted).

"Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Grant v. City of New York*, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007). "To determine whether handcuffing of an arrestee is reasonable, the handcuffing must be viewed in light of the minimal amount of force necessary to maintain custody of [the arrestee]." *Castro v. Cnty. of Nassau*, ___ F. Supp. 2d ___, 2010 WL 3713185, at *15 (E.D.N.Y. 2010). Handcuffing is often reasonable when the arrestee is resisting officers' attempts to detain her or is otherwise resisting arrest. *See Sloane v. Kraus*, No. 06 Civ. 5372, 2010 WL 3489397, at *11 (S.D.N.Y. Sept. 3, 2010). Additionally, absent proof of an excessively long period of time between restraint and booking, that an arrestee is kept in handcuffs while driven to the police station does not make an otherwise reasonable handcuffing excessive. *Compare Calamia v. City of New York*, 879 F.2d 1025 (2d Cir. 1989) (five hour excessively tight handcuffing unreasonable), *with Sloane*, 2010 WL 3489397 (twenty minute handcuffing reasonable). Finally, "while discomfort and pain alone are generally insufficient to render handcuffing unconstitutional excessive force, repeated cuffing of arrestee, combined with other allegations of force," would create a jury question. *Barratt v. Joie*, No. 96 Civ. 0324, 2002 WL 335014, at *9 (S.D.N.Y. Mar.

4, 2002); *Gonzalez v. City of New York*, No. 98-CV-3084, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000) ("[I]f the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force.").

      The undisputed facts, however, demonstrate that the officers' use of force here was reasonable as a matter of law. Beckles complains (1) that it was unreasonable for officers to handcuff her after she said she would go with them willfully; (2) that is was unreasonable for officers to handcuff her after she informed them of her "bad arm;" (3) that it was unreasonable for officers to cuff her with such force as to "re-injure her shoulder;" and (4) that is was unreasonable for officers to keep her in handcuffs while *en route* to and at the police station because she indicated that she was in pain. (*See* Pl.'s Opp'n at 11.) In each circumstance, however, the officers acted reasonably. As to the first three complaints, the events' timeline belies Beckles' argument for unreasonableness. Beckles freely admits that *before* she indicated that she would go peacefully or that she had a bad arm—indeed both before and after the arresting officer had managed to cuff one of Beckles' wrists—Beckles was attempting to avoid the cuffing and was arguing animatedly with the officers. (*See* Beckles 50-H Hr'g at 63-67.) In other words, the arresting officer was confronted with a confused and upset knife assault suspect who "wasn't gonna let him arrest [her]." (*Id*. at 65.) Only after twenty minutes of argument was the officer able to cuff both wrists, at which time Beckles protested that she would go without cuffs and that her arm was in pain. (*See id*. at 66-67.) But when deciding to cuff, the officer did not have that information; and the officers' actions to that point in time were objectively reasonable. *See Kalfus v. New York and Presbyterian Hosp.*, 706 F. Supp. 2d 458, 472 (S.D.N.Y. 2010) (granting

defendant security guards' motion for summary judgment on excessive force claim when facts demonstrated "that Plaintiff was attempting to resist arrest by refusing to stand and place his arms behind his back."); *Husbands ex rel. Forde v. City of New York*, No. 05 Civ. 9252, 2007 WL 2454106, at *10 (S.D.N.Y. Aug. 16, 2007) (granting summary judgment to defendant police officer on excessive force claim where officer punched and then handcuffed suspect who merely "kept his arms by his sides in a manner that prevented Officer Livingston from placing them behind his back in order to handcuff him."); *but see Rafter v. Bank of America*, No. 04 Civ. 3341, 2009 WL 691929, at *7 (S.D.N.Y. Mar. 12, 2009) (summary judgment on excessive force claim inappropriate when police officer cuffed "non-threatening bank customer, who was neither attempting to flee, nor resisting arrest actively.")

Therefore, the true question is whether it was reasonable to keep Beckles in cuffs for the ten-or-so minutes it took to take her to the police station and the twenty minutes during which she sat at the station in restraints, despite the knowledge that she was uncomfortable.  The case law indicates that it was; the activity for which Beckles was a suspect—assault—was serious, Beckles was resisting arrest, and Beckles was released from the cuffs after, seemingly at most, thirty minutes.  *Compare Kalfus*, 706 F. Supp. 2d at 472 (cuffing reasonable when plaintiff resisted arrest, despite the cuffing being so violent as to tear plaintiff's rotator cuff, plaintiff not posing a physical threat to anyone and the alleged crime, trespassing, not severe), *and Jaffe v. Fitzgerald*, No. 06-CV-0317, 2009 WL 804740, at *8-9 (E.D.N.Y. Mar. 27, 2009) (officers holding breach of custody order suspect face-down during cuffing, and then lifting her up by cuffs so as to wrench her arms and cause permanent damage, reasonable considering her writhing on the

ground in order to avoid cuffing),*with Gonzalez*, 2000 WL 516682, at *4 (triable issue of fact for jury when plaintiff was arrested for having plastic over rear tail light, did not resist arrest, and in course of arrest was slammed on the hood of his car and placed in tight handcuffs for two hours before being released ); *and Perez v. City of New York*, No. 07 Civ. 10319, 2009 WL 1616374, at *8 (S.D.N.Y. June 8, 2009) (attempted robbery suspect's thirteen-hour handcuffing raising triable issue for jury on question of excessive force).  Because the undisputed facts thus demonstrate that the officers' decisions to cuff Beckles and keep her in cuffs while taking her to the station were objectively reasonable, defendants are entitled to summary judgment dismissing Beckles' Section 1983 excessive force claim.[4]

**D.  Beckles' Section 1983 and 1985 Conspiracy Claims Fails Because Beckles Sustained No Constitutional Violation**

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages." *AK Tournament Play, Inc. v. Town of Wallkill*, No. 09 Civ. 10579, 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  "Thus, absent an underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law." *Id.* (quoting *Curley*, 268 F.3d at 72).  The Court here has determined that

---

[4] Thus Beckles' "failure to intervene" excessive force claim is also dismissed since "failure to intervene" requires that excessive force was being used by another officer. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

12

Beckles cannot maintain her Section 1983 claim; in other words, Beckles has suffered no constitutional violation. Therefore, Beckles' conspiracy claim must be dismissed.[5]

### E. The Record Does Not Establish Liability Against The City

Municipalities, such as the City, can be liable under Section 1983 "if the alleged offending conduct was undertaken pursuant to 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers . . . , [or] governmental 'custom' even though such a custom has not received formal approval through the . . . [municipality's] official decisionmaking channels.'" *Thomas v. City of New York*, No. 09 Civ. 3162, 2010 WL 5490900, at *14 (S.D.N.Y. Dec. 22, 2010) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)) (alterations in original). A plaintiff need not point to an express rule or regulation, but can show "that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law,' or that a discriminatory practice of subordinate employees was 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)). In other words, plaintiff must prove

---

[5] In her brief, Beckles suggests that she asserts a conspiracy under 42 U.S.C. § 1985 in addition to the Section 1983 conspiracy. (Pl.'s Opp'n at 18 n.1.) This seems wrong. Plaintiff's complaint states "**AS A FIRST CAUSE OF ACTION:** 42 U.S.C [sic] Section 1983-against all Defendants," and, specifically, "Defendants conspired among themselves to deprive plaintiff of his [sic] constitutional rights secured by 42 U.S.C. Section 1983." (Fourth Amend. Compl. at 4 and ¶ 33.) That cause of action never once mentions Section 1985, and there is no separate cause of action anywhere invoking Section 1985. Indeed, Section 1985 is mentioned only in the complaint's first paragraph, under the "**NATURE OF THE ACTION**" heading, and only thusly: "This is an action at law to redress the deprivation of rights secured to the plaintiff . . . by Title 42 U.S.C. § 1983 [and § 1985]." (*Id.* ¶ 1.) Whereas in a *pro se* case, such language might suggest an attempt to bring a Section 1985 claim, this case is counseled; and the causes of action never once mention a Section 1985 conspiracy. Furthermore, a Section 1985 conspiracy also requires a constitutional injury, *see Sajimi v. City of New York*, No. 07-CV-3253, 2011 WL 135004, at *6 (E.D.N.Y. Jan. 13, 2011), and as such cannot be maintained here.

13

"that the municipality took some action that caused [her] injuries beyond merely employing the misbehaving officer." *Thomas*, 2010 WL 5490900, at *14.

Beckles provides no evidence to support her Section 1983 claim as against the City. In the relevant parts of the complaint, Beckles alleges that the City, "as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers . . . for violations of the constitutional rights of citizens . . . [and] who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers." (Fourth Amend. Compl. ¶¶ 26-27.) These conclusory allegations, however, are unsupported by any evidence in the record. Indeed, the *only* evidence even possibly indicating a relevant "policy or custom" are (1) an unnamed, non-arresting officer's alleged hearsay statement referring to Moye and Beckles as "these blacks;" and (2) that the officers did not arrest Roman, a Hispanic. (Beckles 50-H Hr'g at 83; Pl.'s Opp'n at 7.) These facts, even if true, are entirely insufficient to support *Monell* liability. First, the alleged single statement of an unidentified, non-arresting officer is hardly evidence of a policy on behalf of *the City* of prejudice against African Americans. Second, simply as a matter of logic, that one bystander to an altercation both (1) happens to be Hispanic, and (2) does not get arrested, in no way points to a custom of racism towards *African Americans* on the part of the City. Accordingly, Beckles' Section 1983 claim as against the City fails.

**F. Plaintiff's State Law Claims Are Dismissed**

"Federal courts have supplemental jurisdiction over state law claims 'that are so related to claims in the action within [the court's] original jurisdiction that they form part

of the same case or controversy under Article III of the United States Constitution.'" *DCML LLC v. Danka Business Systems PLC*, No. 08 Civ. 5829, 2008 WL 5069528, at *3 (S.D.N.Y. Nov. 26, 2008) (quoting 28 U.S.C. § 1367(a)) (alteration in original). Though a court's exercise of that jurisdiction is discretionary, when "all federal claims have been dismissed before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the state-law claims." *Id.* (alteration in original) (internal quotation marks omitted). Because all of Beckles' federal claims have been dismissed, the Court declines to exercise jurisdiction over Beckles' state law claims and dismisses them without prejudice. Indeed, plaintiff, as well as defendant, agree on this result. (Pl.'s Opp'n at 22 ("Plaintiff agrees with defendants that in the event the Court dismissing [sic] plaintiff's federal claims, that it should decline jurisdiction over plaintiff's state law claims.").)

### III. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment [66] is GRANTED. The Clerk of the Court is directed to close this motion and close this case.

SO ORDERED.

Dated: New York, New York
       February 25, 2011

Richard J. Holwell
United States District Judge